UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ERNEST L. SMITH, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CV 517 CDP |
| | ) | |
| STANLEY PAYNE,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Missouri state prisoner Ernest L. Smith's petition for writ of habeas corpus under 28 U.S.C. § 2254. I will deny the petition.

### **Procedural History**

On February 14, 2011, Smith was charged by criminal complaint in the Circuit Court of St. Louis County, Missouri, with murder second degree and armed criminal action. An amended complaint was filed February 15, charging Smith with murder first degree and armed criminal action. A grand jury returned a two-count indictment on March 16, charging Smith with murder first degree and armed criminal action. On March 4, 2013, an information in lieu of indictment was filed, bringing the same charges and adding Smith's status as a prior offender. Trial on

---

[1] Petitioner is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC). Because Stanley Payne is the current warden at ERDCC, he is substituted for former warden Troy Steele as the proper party respondent

the information began that same date. On March 6, 2013, a jury found Smith guilty of murder second degree and armed criminal action. The court sentenced Smith to concurrent terms of thirty years' and fifteen years' imprisonment, respectively. The Missouri Court of Appeals affirmed Smith's conviction and sentence. *State v. Smith*, 430 S.W.3d 338 (Mo. Ct. App. 2014) (order) (per curiam).

Smith thereafter filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. On March 1, 2016, the Missouri Court of Appeals affirmed the denial of post-conviction relief. *Smith v. State*, 482 S.W.3d 825 (Mo. Ct. App. 2016) (order) (per curiam). Mandate issued March 23, 2016.

Smith timely filed this federal habeas petition on April 13, 2016, raising the following grounds for relief:

> 1) That he was denied due process when the trial court denied his request for mistrial and gave only an oral instruction to the jury regarding the prosecutor's reference to a voice stress analysis during his cross-examination of Smith;
>
> 2) That trial counsel was ineffective for failing to call Tiara Jones and William Stewart as witnesses at trial;
>
> 3) That trial counsel was ineffective for failing to argue to the jury that Marquan Prete did not grab the victim from behind during the shooting; and
>
> 4) That trial counsel and direct appeal counsel were ineffective for failing to raise a claim that his right to a speedy trial was violated.

In response, respondent avers that Smith properly raised these claims in state court and that the Missouri Court of Appeals determined the claims to be without merit. Respondent contends that the court of appeals' determinations are objectively reasonable and are thus entitled to deference. For the following reasons, I agree.

**Legal Standard**

Where the state court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. *Id.* at 380-83.

A state court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13; *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001). A state court's decision is an "unreasonable application"

of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief. Instead, the state court's application of the law must be objectively unreasonable. *Id.* at 409-11; *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, a federal court must presume that state court findings of basic, primary, or historical facts are correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not *ipso facto* ensure the grant of habeas relief. Instead, the determination of these facts must be unreasonable in light of the evidence of record. *Collier*, 485 F.3d at 423; *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA [Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). To obtain habeas relief from a federal court, the petitioner must show that the

challenged state court ruling "rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). This standard is difficult to meet. *Id.*

**Relevant Factual Background**

Evidence adduced at trial showed that Smith's home was burglarized in early 2011. On February 6, 2011, Anthony Ramsey, an acquaintance of Smith's, went to Smith's home to tell him that Christopher "Merk" Scott was the person who burglarized his home and that there was another plan to rob him. Later that day, Scott arrived at Smith's house to purchase heroin. In addition to Smith, Scott, and Ramsey, Marquan Prete and another individual were present at the house. While Scott was sitting on Smith's couch, Smith grabbed a gun, hit Scott with it, and asked Scott where his "stuff" was. Smith and Scott then wrestled over the gun. Smith fired the gun, hitting Scott in the neck. As Scott attempted to flee, the other individual present struck him with a broom handle and Scott fell. When Scott got up and turned back toward Smith, Smith shot him again, striking him in the right eye and killing him.

Smith wrapped Scott's body in plastic and duct tape. He drove the body to East St. Louis, Illinois, where he discarded it next to some dumpsters, poured

gasoline on it, and set it on fire. While crossing the bridge returning to Missouri, Smith threw the gun he had used to kill Scott into the Mississippi River.

Smith's defense at trial was that he acted in self-defense.

**Discussion**

Ground 1:  Trial Court's Failure to Declare Mistrial After Prosecutor's Reference to Voice Stress Test

Smith testified in his own defense at trial. He testified that he voluntarily went to the police station on February 13, 2011, after receiving a message from the police. He testified that he first told the police that he was not involved in the incident, but then told them that he shot an intruder who was breaking into his home and later discovered that it was Scott. Smith then testified that he later gave a third version to the police, that is, that he accidentally shot Scott when Scott jumped off the couch and attacked him.

On cross-examination, Smith admitted that he talked to the police several times and that he first denied any knowledge of the incident. Smith also testified that although he told the police that he lit Scott's body on fire, it was someone else who actually set fire to the body. The prosecutor continued, "And they did a voice stress analysis on you that you agreed to take, and they came back saying: We think you're lying." (Resp. Exh. 1 at 405-06.) At that point, defense counsel objected and moved for a mistrial, claiming that any reference to or results from a voice stress test are not admissible because they are unreliable, and that permitting

such reference prejudiced Smith given that his credibility was a key factor in his defense. The court overruled the motion for mistrial, but gave a curative instruction to the jury, telling them to ignore the prosecutor's question and not to speculate as to what answer may have been given. (*Id.* at 419.)

Smith claims that the failure to grant a mistrial denied him due process. Smith raised this claim on direct appeal. Upon review of the merits of the claim, the Missouri Court of Appeals denied relief.

Whether evidence may be admitted in a state court trial is a matter of state law. *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2001). This includes evidence related to polygraph tests or, in this case, voice stress tests. *Id.* Whether to grant a mistrial is likewise a matter of state law and is left to the trial judge's discretion. *Schneider v. Delo*, 890 F. Supp. 791, 838 (E.D. Mo. 1995). "It is a drastic remedy only to be utilized when no other means exist to minimize or remove the prejudice to the defendant." *Id.*

It is well established that federal habeas relief does not lie for errors of state law and that a federal habeas court may not re-examine state-court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). For purposes of habeas review under 28 U.S.C. § 2254, therefore, I consider only the question of whether the state trial court's ruling on Smith's motion for mistrial rendered his trial fundamentally unfair so as to deny due process. *Weston*, 272

F.3d at 1113. Under this standard, Smith must show that there is a reasonable probability that the error complained of affected the outcome of the trial, that is, that absent the alleged error, the verdict probably would have been different. *Kellogg v. Skon*, 176 F.3d 447, 451 (8th Cir. 1999).

Here, the Missouri Court of Appeals found that Smith did not meet this standard. Assuming for the sake of argument that the prosecutor should not have referenced the voice stress test, the court of appeals determined that such error did not prejudice the jury to the point of depriving Smith of a fair trial, and therefore that the trial court's failure to grant a mistrial did not violate Smith's right to due process. (Resp. Exh. 5, Memo. at pp. 4-5.) The court of appeals considered, first, that the prosecutor mentioned the voice stress test only once and did not attempt to use the test as part of a "theme" to infer Smith's lack of credibility. The court of appeals also noted that the trial court sustained defense counsel's immediate objection to this reference and provided a curative instruction to the jury to disregard the question and to refrain from speculating as to what the response may have been. (*Id.* at p. 5.) Most notably, the court of appeals observed that Smith had already admitted in his testimony that he had lied to the police, and further that overwhelming evidence established Smith's guilt. The court of appeals thus determined that even in the absence of the prosecutor's improper reference, a reasonable jury would have found that the evidence overwhelmingly established

Smith's lack of credibility as well as his guilt of second degree murder and armed criminal action. (*Id.* at p. 6.)

Given the isolated nature of the prosecutor's comment, the curative instruction, the fact that Smith had already admitted through his testimony that he lied to the police (about both the circumstances of the shooting and who burned the victim's body), and the overwhelming evidence of guilt and Smith's lack of credibility, it cannot reasonably be said that the prosecutor's passing reference to the voice stress test rendered Smith's trial fundamentally unfair such that the trial court should have declared a mistrial. *See Weston*, 272 F.3d at 1113.

The Missouri Court of Appeals' determination was neither contrary to nor an unreasonable application of Supreme Court precedent. Nor has Smith demonstrated that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Smith's claim that the trial court's failure to declare a mistrial deprived him of due process is denied.

Ground 2:    Trial Counsel's Failure to Call Jones and Stewart as Witnesses

Anthony Ramsey testified for the State at trial. He testified that when he arrived at Smith's house on February 6, he spoke with Smith's girlfriend, Tiara Jones, but could not remember what they talked about. Smith avers that if called as a witness, Jones would have testified that her conversation with Ramsey

involved Ramsey telling her that Scott and another person were coming to Smith's home to rob and kill him. Ramsey also testified that William Stewart told him that Smith thought Scott was the person who had broken into his home. Smith avers that if called as a witness, Stewart would have testified that he never told Ramsey this, and that instead Ramsey told Stewart that Scott planned to rob and kill Smith.

Smith claims that trial counsel was ineffective in failing to call Jones and Stewart to testify on his behalf at trial. Smith raised this claim in his Rule 29.15 post-conviction motion and on appeal of the denial of the motion. Upon consideration of the merits of the claim, the Missouri Court of Appeals denied relief.

At the time Smith's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To be entitled to federal habeas relief on his claim of ineffective assistance of counsel, Smith must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. *Id.* In order to prevail on this claim, Smith must satisfy both components of the *Strickland* test. Accordingly, if he makes an "insufficient showing" on one component, I am not required to address the other. *Id.* at 697.

In evaluating counsel's performance, the basic inquiry is "whether counsel's

assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Smith bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In addition, a presumption exists that counsel's conduct "might be considered sound trial strategy." *Id.* at 688. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690-91. To establish prejudice, Smith "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

With respect to Smith's claim regarding Jones, the Missouri Court of Appeals noted that trial counsel chose not to call her to testify after the investigator interviewed her. The Missouri Court of Appeals determined that counsel's decision was a matter of sound trial strategy, based on evidence that

> Jones failed to appear at two deposition settings arranged by trial counsel. Even after Jones was personally served with a subpoena to appear as a witness for the State, she failed to appear at trial despite telling the prosecutor that she was on her way. . . . [I]n arguing against the State's request for body attachment of Jones, trial counsel stated that Jones had made several inconsistent statements to police and allowing Jones to testify would deprive [Smith] of a fair trial.

(Resp. Exh. 11, Memo. at pp. 5-6.)

Counsel does not render deficient performance in failing to call an uncooperative witness to testify or a witness whose testimony could be detrimental to the defense. *Forest v. Delo*, 52 F.3d 716, 722 (8th Cir. 1995) (uncooperative witness); *Johns v. Bowersox*, 203 F.3d 538, 546 (8th Cir. 2000) (reasonable not to present evidence that would be more detrimental than helpful); *Haley v. Armontrout*, 924 F.2d 735, 740 (8th Cir. 1991) (counsel did not render ineffective assistance by failing to use witness testimony that would not have benefitted petitioner and may have had significant detrimental effect). "[A] reasoned decision not to call a witness is a virtually unchallengeable decision of trial strategy." *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010) (internal citation and quotation marks omitted).

With respect to Stewart, the court of appeals noted that the purpose of his proffered testimony was to impeach Ramsey by attacking his credibility. The court observed that trial counsel had already "comprehensively attacked Ramsey's credibility" by impeaching him with his prior criminal history and prior inconsistent statements. (Resp. Exh. 11, Memo. at pp. 6-7, n.4.) Further, the court noted that even if Stewart would have testified, his proffered testimony would not have established Smith's defense because Stewart would not have testified that he relayed the message to Smith that Scott intended to rob him. Accordingly, the testimony would not have established Smith's state of mind relevant to his claim of

self-defense. (*Id.* at p. 6.) The court of appeals therefore determined that Smith failed to show that he was prejudiced as a result of counsel's failure to call Stewart to testify, especially given the overwhelming evidence of guilt. (*Id.* at p. 7.) There is no prejudice in failing to call a witness to testify if, factoring in their testimony, the government's case remains overwhelming. *McCauley-Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir. 1996).

The Missouri Court of Appeals' decision was neither contrary to nor involved an unreasonable application of clearly established federal law. Nor was it based on an unreasonable determination of the facts. The court identified the correct governing legal rule on ineffective assistance of counsel from *Strickland* and reasonably applied it to the facts of the case. It was not objectively unreasonable for the court of appeals to conclude that counsel's decision to not call Jones as a defense witness was a matter of trial strategy and that failure to call Stewart did not change the outcome of the trial. This claim of ineffective assistance of trial counsel is denied.

Ground 3:   Trial Counsel's Failure to Present Argument Regarding Prete's Physical Location During the Shooting.

There was competing testimony at trial regarding where Marquan Prete was and what he was doing when Smith first shot Scott. Prete testified that he was standing next to Scott when Smith fired the first shot and that the gun rang in his ear, causing him to pass out. Ramsey testified that Prete was behind Scott, trying

to put him in a "full Nelson," but that he had difficulty doing so because he was shorter than Scott. Smith testified that Prete did not try to grab Scott.

In his third ground for relief, Smith claims that trial counsel was ineffective during closing argument when she failed to argue to the jury that Prete was not holding Scott from behind. Smith raised this claim in his post-conviction motion and on appeal of the denial of the motion. Upon review of the merits of the claim, the Missouri Court of Appeals determined that counsel's failure to argue to the jury that Prete was not trying to hold Scott from behind during the shooting was reasonable trial strategy. "At trial, the State did not argue that Prete had restrained or attempted to restrain Victim during the shooting. . . . [I]t was reasonable trial strategy for trial counsel not to make an argument against an assertion that the State had not made, especially when the record indicates no evidence supporting such assertion." (Resp. Exh. 11, Memo. at pp. 8-9.) This decision is supported by the record and entitle to deference.

In *Yarborough v. Gentry*, the Supreme Court explained the deference courts give to defense counsel's decisions regarding closing argument:

> [C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in [her] closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should sharpen and clarify the issues for resolution by the trier of fact, but which issues to sharpen and how best to clarify them are questions with many reasonable answers. . . . Judicial review of a defense attorney's summation is therefore highly deferential – and doubly

deferential when it is conducted through the lens of federal habeas. 540 U.S. 1, 5-6 (2003) (internal quotation marks and citations omitted). Here, given that the State made no argument that Prete had attempted to hold Scott when Smith shot him, it was reasonable for counsel not to address the issue, especially with the competing testimony and the lack of conclusive evidence either way. Smith has failed to overcome the presumption that, under the circumstances, counsel's challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 688.

I am not aware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the state court's decision runs afoul, nor has Smith demonstrated such. Therefore, it cannot be said that the court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Smith shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Smith is not entitled to habeas relief on this claim.

Ground 4:   Counsel's Failure to Raise a Claim of a Speedy Trial Violation

Smith was charged by criminal complaint on February 14, 2011, which was amended on February 15. On March 1, Smith filed a *pro se* motion for speedy

trial, requesting trial within 180 days. Smith was indicted on March 16. Trial counsel entered her appearance at Smith's arraignment, which occurred on March 23. Smith's trial began nearly two years later, on March 4, 2013. Trial counsel never brought the speedy trial issue to the attention of the trial court, nor did the court address the issue. Nor did counsel raise a speedy trial claim on direct appeal. Smith claims that both trial counsel and direct appeal counsel were ineffective for failing to pursue a claim that his right to speedy trial was violated.

Smith raised his claims of ineffective assistance of counsel in his post-conviction motion and on appeal of the denial of his motion. On appeal, the Missouri Court of Appeals reviewed Smith's underlying claim that his Sixth Amendment right to a speedy trial was violated. Applying the factors set out in *Barker v. Wingo*, 407 U.S. 514 (1972),[2] the court of appeals found Smith's Sixth Amendment claim to be without merit. Specifically, the court noted that the pretrial process included several settlement conferences and pretrial hearings; that Smith filed motions to suppress, which were scheduled and heard by the court; and that trial settings were continued because of court conflicts and at Smith's request so that he could pursue pretrial motions. (Resp. Exh. 11, Memo. at p. 11.)

> On the first trial date, [Smith] wanted to pursue motions to suppress evidence and statements, thus, a continuance was granted. Also, the evidence at the post-conviction evidentiary hearing established some

---

[2] The *Barker* factors are: 1) length of delay, 2) the reason for the delay, 3) the defendant's assertion of his right, and 4) prejudice to the defendant. *Barker*, 407 U.S. at 530.

> of the delay was attributable to the defense's need to complete discovery and prepare for trial. The discovery took longer than usual because one witness, Jones, had failed to appear twice for depositions arranged by trial counsel. Furthermore, [Smith] did not inform his trial counsel of his *pro se* speedy trial motion and the counsel was unaware of such motion. [Smith] neither asked trial counsel about his court dates nor voiced any objection to his trial being continued. Accordingly, the delay is partially attributable to [Smith].

(*Id.*) The court of appeals also noted that Smith filed his *pro se* motion three weeks before counsel entered her appearance, did not inform counsel of the motion, and did not thereafter express his desire for a speedy trial. (*Id.* at p. 12.) Finally, the court noted that Smith conceded that the delay did not impair his defense, and that his only complaint was that he had to spend "dead time" in jail waiting for his trial to begin. (*Id.*)

Weighing all of the *Barker* factors, the court of appeals concluded that Smith was not deprived of his right to a speedy trial. (Resp. Exh. 11, Memo. at p. 13.) It therefore determined that trial counsel was not ineffective for failing to file a motion to dismiss based on a speedy trial violation, given that such a motion would have likely been denied. (*Id.*) Counsel does not act "outside the spectrum of professionally reasonable performance" in failing to pursue an argument that is unlikely to succeed. *McReynolds v. Kemna*, 208 F.3d 721, 724 (8th Cir. 2000).

For this same reason, the court of appeals determined that direct appeal counsel was not ineffective in failing to raise this non-meritorious claim on appeal. (Resp. Exh. 11, Memo. at p. 13.) *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985)

(criminal defendant entitled to effective assistance of counsel on direct appeal); *Garrett v. United States*, 78 F.3d 1296, 1305 (8th Cir. 1996) (direct appeal counsel not ineffective in failing to raise non-meritorious claim). The court of appeals found this to be especially true here, given that the speedy trial claim was not raised in Smith's motion for new trial and therefore could have been reviewed on appeal only for plain error. Based on its own analysis of the claim, the court determined that the record on direct appeal would not have shown that the delay caused any manifest injustice, which is required to prevail on an unpreserved claim. (Resp. Exh. 11, Memo. at p. 13.) Therefore, if counsel had indeed raised the claim on direct appeal, it is not likely that the outcome of the appeal would have been different. Smith therefore cannot succeed on his claim of ineffective assistance of direct appeal counsel. *Chambers v. Bowersox*, 157 F.3d 560, 566 (8th Cir. 1998) (*Strickland* applies to claims of ineffective assistance of direct appeal counsel); *Armstrong v. Gammon*, 195 F.3d 441, 445 (8th Cir. 1999) (where petitioner does not show a reasonable probability that the outcome of his appeal would have been different, claim of ineffective assistance of direct appeal counsel fails).

Although Smith argues in his Traverse that appellate counsel gave inconsistent statements regarding his knowledge of Smith's *pro se* motion for speedy trial, this circumstance does not change the analysis. The Missouri Court

of Appeals' determination that counsel was not ineffective was based on its own analysis of the underlying Sixth Amendment claim and its conclusion that Smith would not have prevailed on the claim. Whether or not direct appeal counsel was aware of Smith's *pro se* motion was not relevant to this analysis.

The Missouri Court of Appeals' decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Smith shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The claims raised in Ground 4 of Smith's habeas petition are denied.

**Certificate of Appealability**

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order denying habeas relief in a § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. 28 U.S.C. § 2253(c)(2); *see Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris,* 133 F.3d 565,

569 (8th Cir. 1997). I find that reasonable jurists could not differ on any of Smith's claims, so I will deny a Certificate of Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that Stanley Payne is substituted for Troy Steele as proper party respondent.

**IT IS FURTHER ORDERED** that the petition of Ernest L. Smith for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] is denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not issue in this action because petitioner has not made a substantial showing of a denial of a constitutional right.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of October, 2019.